Dear Mr. Conyer,
You have requested an opinion of this Office regarding what "procurement" procedures, if any, the Sabine River Authority ("SRA") must follow, prior to entering into a contract or agreement which provides for the sale, utilization, distribution, or consumption of water (over which the SRA has jurisdiction or control) to entities located outside the boundaries of the State of Louisiana ("State"). The SRA, as an agency and instrumentality of the State, has a unique legislative history which has been detailed in numerous opinions of this Office.[1] However, your inquiry stems from a bidding process matter described in a report of the Louisiana Inspector General ("LIG") dated November 23, 2005.[2]
Although the details of the LIG matter do not directly relate to your current opinion request, that matter does serve as the background for the reason why you have requested this opinion.
The LIG report specifically stated:
SRA used RFP [request for proposal] guidelines as specified in the Louisiana Procurement Code, La.R.S. 39:1551, et seq. However, SRA's use of the Procurement Code is not applicable for this venture since the proposed lease of its property is a situation where SRA seeks to generate revenue. The Procurement Code is intended for the use by state agencies for the buying, purchasing, renting, leasing, or the obtaining of supplies, *Page 2 
services, or major repairs. In other words, the Procurement Code is used when state entities expend funds.[3]
Pursuant to the questions that you presented regarding this finding by the LIG, this opinion provides you with: (1) an explanation of the relevant statutes authorizing the SRA to enter into contracts or agreements for the sale, utilization, distribution, or consumption of water within its jurisdiction; (2) a brief recitation and analysis of laws of general applicability in our State, including the Procurement Code, Public Bid Law, Public Lease Law, and laws involving the sale of surplus property; and (3) the procedure to be used by the SRA for entering into contracts for the sale, utilization, distribution, or consumption of water (over which the SRA has jurisdiction or control) to entities located inside and outside the boundaries of the State.[4]
 SABINE RIVER AUTHORITY
La.R.S. 38:2325 states, in pertinent part, that the Sabine River Authority:
shall have the power: (3) To make and enter into contracts, conveyances, mortgages, deeds or trusts, bonds, and leases in the carrying out of its corporate objectives . . .;(9) To do all things necessary or convenient to carry out its functions; (10) To conserve, store, control, preserve, utilize, and distribute the waters of the rivers and streams of the Sabine watershed including but not limited to all waters flowing through the Sabine River Channel and Diversion System.
With regard to contracts or agreements that specifically provide for the sale, utilization, distribution, or consumption of water, La.R.S. 38:2325
also states that the SRA shall have the following powers:
(16) To enter into any and all contracts and other agreements with any person, real or artificial, any public or private entity, any government or governmental agency, including the United States of America, the state of Texas, the Sabine River Authority of Texas, the state of Louisiana, and the agencies, bureaus, departments, and political subdivisions thereof, which contracts and other agreements may provide for the sale, *Page 3 conservation, storage, utilization, preservation, distribution, or consumption, whether within or without the state of Louisiana, of the waters over which the Authority has jurisdiction or over which the Authority has legal control; however, the written concurrence of the governor shall be required for any contracts and other agreements which provide for the sale, utilization, distribution, or consumption, outside of the boundaries of the state of Louisiana, of the waters over which the Authority has jurisdiction or control.[5]
The latter law not only authorizes the SRA to independently enter into contracts and other agreements that provide for the sale, conservation, storage, utilization, preservation, distribution, or consumption of water within its jurisdiction to entities located within or without the territorial boundaries of the State, but it also provides a very specific method for entering into contracts with entities outside the boundaries of the State. As quoted above "any contracts and other agreements which provide for the sale, utilization, distribution, or consumption, outsideof the boundaries of the state of Louisiana, of the waters over which the Authority has jurisdiction or control require the written concurrence of the governor."[6]
As explained in previous opinions of this Office, the SRA's statutory authority and independence makes it a unique governmental entity.[7] In further support of this notion, La.R.S. 38:2337 states that:
[t]his Chapter shall be full, complete and independent authority for the performance of all acts herein authorized, and no other statute or legislative act shall be construed to be applicable to the carrying out of the powers herein granted unless herein expressly so made applicable.
In La. Atty. Gen. Op. No. 97-0287, which also involved the SRA, this Office asserted that "[r]arely in our law do we find such a sweeping grant of independent authority to an agency of the state." Therefore, while appreciating this delegation of "complete and independent authority for the performance of all acts" within the authority of the SRA, we must now consider the effect of the general laws affecting the purchasing, leasing, and sale of public property by public entities in our State. *Page 4 PROCUREMENT CODE, PUBLIC BID LAW, PUBLIC LEASE LAW, THE SALE OF SURPLUSPROPERTY, AND OTHER RELEVANT STATE LAWS
 Procurement Code
In considering your inquiry and specifically what "procurement procedures" the SRA must follow to sell water to out of state entities, it should be noted that Black's Law Dictionary defines "procurement" as "[t]he act of getting or obtaining something or of bringing something about."[8] While the Louisiana Procurement Code (La.R.S. 39:1551, et.seq.) contains several express exceptions, it states, in pertinent part, that "this Chapter shall apply to every expenditure of public funds irrespective of their source . . . by this state, acting through a governmental body defined herein, under any contract for supplies, services, or major repairs defined herein."[9] Thus, although you have used the word "procurement" in your request, it is apparent that the general definition of the term "procurement" and the actual scope of Louisiana's Procurement Code are somewhat different. With regard to the application of the Procurement Code, it is important to note that the sale, utilization, distribution, or consumption of water is not an "expenditure," much less a "contract for supplies, services, or major repairs."[10] Thus, it is our opinion that the Procurement Code does not apply to SRA-contemplated water sales.
Public Bid Law
In addition to the Louisiana Procurement Code, Louisiana also has public bid statutes. The Louisiana Public Bid Law, La.R.S. 38:2211-2296, regulates contracts by public entities when the contracts relate to the construction of public works or the acquisition of materials and supplies.[11] Because, in planning to sell water within its control, the SRA is not buying, purchasing, renting, leasing, or obtaining supplies, services, or major repairs, nor is it entering into a contract for the construction of public works or the acquisitions of materials and supplies, it is our opinion that the Louisiana Public Bid law also does not apply to the current scenario. *Page 5 Public Lease Law
Louisiana Public Lease Law is set forth in La.R.S. 41:1211, et seq. The aforementioned report of the LIG examined the SRA's compliance with the Public Lease Law with regard to the SRA's awarding of an Option and Ground Lease Agreement for the construction of a telecommunications tower to increase cellular reception in the Toledo Bend area. The current situation is distinguishable from the one detailed in the LIG's reference to Louisiana Public Lease Law. It should be noted that the sale, utilization, distribution, or consumption of water is not capable of being "leased" to an out-of-state entity, because such a sale would ultimately result in the conveyance of a movable thing (water) as opposed to the transfer of the "right to use" of the water in exchange for consideration.[12] Therefore, while the public lease law may have been applicable in the leasing of land for a telecommunications tower, it is not applicable to the sale, utilization, distribution, or consumption of water within the SRA's jurisdictional boundaries.
Sale of Surplus Movable Property
Generally, any surplus movable property of the State, or of any board, commission, agency, or department of the State, can only be sold through the Division of Administration on its behalf, and then only at public auction after appropriate advertisement or by compliance with the Public Bid Law provided in La.R.S. 39:330.1 and La.R.S. 49:125.[13] While these statutes provide the general rule for the sale of surplus movable property by State agencies, this Office has maintained that a public entity [specifically the SRA] may be exempt from the operation of general regulatory laws when the entity is granted broad and sweeping discretion and authority within its special statutes.[14] In considering the SRA's explicit authority to enter contracts or agreements for the sale, utilization, distribution, or consumption of water within the SRA's jurisdictional boundaries, this Office is of the opinion that the SRA is exempt from the operation of the general laws governing the sale of surplus movable property.
La.R.S. 39:11
With regard to the administration and supervision of lands, waterbottoms, and facilities owned or leased by the State, La.R.S. 39:11
requires that the Commissioner of Administration "shall be an essential party to all transactions involving immovable *Page 6 
 property in which the state has an interest. No such immovable property shall be acquired, transferred, leased, or encumbered without the commissioner being a party to the transaction."[15] Because the Louisiana Civil Code classifies corporeal movables as "things, whether animate or inanimate, that normally move or can be moved from one place to another," the water to be sold by the SRA is in fact a corporeal movable which is not affected by the requirements of La.R.S. 39:11.[16]
 Act 955 of 2010 Regular Session
Given the increased interest in the withdrawal of surface waters in our State, the Legislature recently enacted Act 955 of the 2010 Regular Session. That law creates a mechanism for the withdrawal and sale of running surface waters by implementing a procedure to allow the Department of Natural Resources ("DNR") to enter into cooperative endeavor agreements for the withdrawal of running surface water from bodies of water in Louisiana.[17]
Act 955 of the 2010 Regular Session, states in pertinent part:
La.R.S. 30:961. Cooperative endeavor agreements; withdrawal of surface water; intent
A. As provided by this Chapter and except as otherwise provided by law, a person or entity may enter into a cooperative endeavor agreement to withdraw running surface water as described in this Chapter . . . Unless otherwise provided by law, all cooperative endeavor agreements to withdraw running surface water, and any assignment of such agreement, shall be approved by the secretary as provided in this Chapter. No provision contained in this Chapter should be construed as a requirement for any person or entity to enter into any cooperative endeavor agreement to withdraw running surface water . . .
B. No agency or subdivision of the state otherwise authorized to enter into a cooperative endeavor agreement to withdraw running surface water, or assignment of such shall do so unless the said agreement is in writing, provides for fair market value to the state, is in the public interest, and is contained on an uniform form developed and prescribed by the State *Page 7 
Mineral and Energy Board and approved by the attorney general. Fair market value to the state shall include, but not be limited to, the economic development, employment, and increased tax revenues created by the activities associated with the withdrawal of running surface water. No such cooperative endeavor agreement to withdraw running surface water shall be valid unless and until such agreement is approved by the secretary following the submission of an application for approval, which the secretary shall develop and prescribe.
C. Unless otherwise provided by law, the secretary is authorized to enter into any cooperative endeavor agreement to withdraw running surface water, provided that any such agreement complies with the prohibition against gratuitous donation of state property by ensuring that the state receives fair market value for any water removed, and the substance of the agreement is contained within a written cooperative endeavor agreement as provided for in Article VII, Section 14 of the Constitution of Louisiana.
 *** La.R.S. 30:963. Management by the Department of Natural Resources
A. Except as otherwise provided by law, the Department of Natural Resources shall be the state agency charged with managing and monitoring the implementation of all cooperative endeavor agreements to withdraw running surface water or assignments thereof . . .[18]
In considering that La.R.S. 38:2337 states that the Chapter of laws governing the SRA "shall be [the] full, complete and independent authority for the performance of all acts herein authorized, and no other statute or legislative act shall be construed to be applicable to the carrying out of the powers herein granted unless herein expressly so made applicable," and that the procedures included in Act 955 of the 2010 Regular Session are only applicable "except as otherwise provided by law," this Office is of the opinion that La.R.S. 30:961, et seq. (Act 955
of 2010), does not apply to or affect the SRA's authority to enter into any contracts or other agreements which provide for the sale, utilization, distribution, or consumption of water within the SRA's jurisdictional boundaries.
However, because DNR holds the authority to enter into cooperative endeavor agreements for the withdrawal of running surface water for the majority of the State, it is *Page 8 
advisable for the SRA to discuss any agreements which provide for the sale, utilization, distribution, or consumption of water within the SRA's jurisdictional boundaries with DNR to ensure that all State entities are consistently ensuring that "the natural resources of the state, including . . . water . . . [are] protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people," as required by La.Const. Art. IX, § 1, also known as the "Public Trust Mandate".
In interpreting the Public Trust Mandate, the Louisiana Supreme Court in Save Ourselves, Inc. v. Louisiana Environmental ControlCom'n, 452 So.2d 1152 (La. 1984) has held that:
[i]t is the well settled law of this country that a state holds title to land under navigable waters within its limits and that the title is held in trust for the people of the state that they may enjoy and use the waters free from obstruction or interference. Illinois Central R. Co. v. Illinois, 146 U.S. 387, 13 S.Ct. 110, 36 L.Ed. 1018 (1892). A public trust for the protection, conservation and replenishment of all natural resources of the state was recognized by art. VI § 1 of the 1921 Louisiana Constitution. The public trust doctrine was continued by the 1974 Louisiana Constitution, which specifically lists air and water as natural resources, commands protection, conservation and replenishment of them insofar as possible and consistent with health, safety and welfare of the people, and mandates the legislature to enact laws to implement this policy. La.Const. art. IX § 1; Cf. Id. art. IX § 3; Gulf Oil Corp. v. State Mineral Board, 317 So.2d 576, 580 (1975) (on rehearing).
Therefore, because both the DNR and SRA are obligated to comply with the Public Trust Mandate while executing their separate statutory duties, this Office advises the SRA to collaborate with DNR with regard to any agreements which provide for the sale, utilization, distribution, or consumption of State-owned water.
PROCEDURE TO BE USED BY SRA PRIOR TO ENTERING INTO A CONTRACT ORAGREEMENT WHICH PROVIDES FOR THE SALE, UTILIZATION, DISTRIBUTION. ORCONSUMPTION OF WATER WITHIN ITS JURISDICTION
While much of the law and history provided above is of no consequence to the actual procedure to be used by the SRA for entering into any contracts and other agreements which provide for the sale, utilization, distribution, or consumption of water with the SRA's jurisdictional boundaries, the review above is necessary to answering your question.
Given the sweeping grant of independent authority to the SRA by the Legislature for the purpose of entering into any contracts and other agreements which provide for the sale, *Page 9 
utilization, distribution, or consumption of water within its jurisdictional boundaries, and the non-applicability of Procurement Code, Public Bid Law, Public Lease Law, it is the opinion of this Office that the procedure detailed in La.R.S. 38:2325(16) is the only one with which the SRA must comply in this specific situation.
Therefore, pursuant to La.R.S. 38:2325, the SRA has the independent authority to sell, utilize, distribute, or consume the waters over which it has jurisdiction, provided that, if any contracts and other agreements which provide for the sale, utilization, distribution, or consumption, are with entities located outside of the boundaries of the State, the written concurrence of the Governor is required.
CONCLUSION
Pursuant to La.R.S. 38:2325(16) and La.R.S. 38:2337, the Sabine River Authority has the independent authority to enter into contracts or agreements to sell, utilize, distribute, or consume the waters over which it has jurisdiction. However, if any contracts and other agreements which provide for the sale, utilization, distribution, or consumption, are with entities located outside of the boundaries of the State of Louisiana, the written concurrence of the Governor is required under these same laws.
Yours very truly,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
BY:__________________________ DANIEL D. HENRY, JR. Assistant Attorney General
JDC/DDH/jv
[1] See La. Atty. Gen. Op. Nos. 86-32, 91-455, 92-646, 97-287, 98-416, 07-0093, and 09-0166.
[2] Louisiana Inspector General Report No. 1-05-0028.
[3] Id. at 7.
[4] It should be noted that while this opinion discusses the procedure to be used by the SRA for entering into or procuring contracts and/or agreements for the sale, utilization, distribution, or consumption of water, any contract or agreement that is entered into by the SRA must comply with La.Const. Art. VII § 14, since water is a thing of value. La.Const. Art. VII § 14 (A) states that "property, or things of value of the state or any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private."
[5] Emphasis added. La.R.S. 38:2325(16) was enacted pursuant to Act 251 of the 2005 Regular Session.
[6] Id.
[7] See La. Atty. Gen. Op. Nos. 86-32, 91-455, 92-646, 97-287, 98-416, 07-0093, and 09-0166.
[8] Black's Law Dictionary (9th ed. 2009).
[9] La.R.S. 39:1554 (emphasis added).
[10] La.R.S. 39:1556(4) defines "contract" as "all types of state agreements, regardless of what they may be called, for the purchase of supplies, services, or major repairs. It includes awards and notices of award; contracts of a fixed-price, cost, cost-plus-a-fixed-fee, or incentive type; contracts providing for the issuance of job or task orders; leases; letter contracts; and purchase orders. It also includes supplemental agreements with respect to any of the foregoing."
[11] La. Atty. Gen. Op. No. 07-0061.
[12] La.C.C. Art. Art. 2668 defines a lease as "a synallagmatic contract by which one party, the lessor, binds himself to give to the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay."
[13] La. Atty. Gen. Op. No. 79-1222.
[14] La. Atty. Gen. Op. 07-0093, citing Arnold v. Board of LeveeCommissioners of the Orleans Levee District, 366 So.2d 1321 (La. 1978).See also, La. Atty. Gen. Op. No. 97-287.
[15] Emphasis added.
[16] La.C.C. Art. 471.
[17] La. Atty. Gen. Op. No. 10-0173. Act 955 of the 2010 Regular Session enacted Chapter 9-B of Title 30 of the Louisiana Revised Statutes, specifically La.R.S. 30:961-963.
[18] Emphasis added.